IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DEBORAH BROWN, LAMINTRESS LYLES, STEVEN WALTERS, and TIARA JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE JOHNS HOPKINS HEALTH SYSTEM CORPORATION, ADMINISTRATIVE COMMITTEE JOHNS HOPKINS HEALTH SYSTEM CORPORATION, AND JOHN DOES 1-10,<br><br>Defendants. | CIVIL ACTION NO.: |

## CLASS ACTION COMPLAINT

Plaintiffs, Deborah Brown, Lamintress Lyles, Steven Walters and Tiara Jones ("Plaintiffs"), by and through their attorneys, on behalf of The Johns Hopkins Health System Corporation 403(b) Plan (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I.    INTRODUCTION

1.      This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, The Johns Hopkins Health System Corporation ("Hopkins" or the "Company"), and the Administrative Committee Johns Hopkins Health System ("Committee") (collectively, the

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

Company and the Committee are referred to as the "Defendants") for breaches of their fiduciary duties.

2.      The Plan is a defined contribution retirement plan or a 403(b) plan, established pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34) of ERISA, that enables eligible participants to make tax-deferred contributions from their salaries to the Plan. *See* Independent Auditor's Report ("Auditor's Report"), attached to 2024 Form 5500 for the Plan, at 7 ("The Plan is a defined contribution 403(b) plan covering substantially all employees of The Johns Hopkins Health System Corporation, The Johns Hopkins Hospital, The Johns Hopkins Bayview Medical Center, Inc., and The Johns Hopkins Medical Services Corporation (collectively, the Corporation), unless covered by a collective bargaining agreement. The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).").

3.      To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B). These twin fiduciary duties are "the highest known to the law." *Tatum v. RJR Pension Investment Committee et al.*, 761 F.3d 346, 356 (4th Cir. 2014).

4.      The Department of Labor ("DOL") has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, "establish a prudent process for selecting investment options and service providers," including providers of the Plan's administrative and recordkeeping ("RKA") services.[2]

---

[2] *See* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Sept. 2019), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf; *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823,

5.     With regard to plan fees, the DOL states "You should know that your employer also must consider the fees and expenses paid by your plan."[3]

6.     Under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

7.     "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) ("*Tibble II*") (en banc) (quoting Restatement (Third) of Trusts, § 90, cmt. b).

8.     Additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees…lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble II*, 843 F.3d at 1198 ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

9.     The Supreme Court reiterated that interpreting "ERISA's duty of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes v. Northwestern Univ.*, 142 S.Ct. 737, 741 (2022).

---

1823 (2015) ("*Tibble I*") (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

[3] *Id.*

10.     At all times during the Class Period, the Plan had significant assets under management. At the Plan's fiscal year end in 2020, the Plan had $1,192,752,529 in assets under management that were/are entrusted to the care of the Plan's fiduciaries. *See* 2020 Form 5500 for the Plan, Schedule H, at 2.

11.     By 2024, the Plan had $1,677,903,170 in assets under management. *See* 2024 Form 5500 for the Plan, Schedule H, at 2.

12.     The Plan is also large in terms of the number of its participants. At the Plan's fiscal year end in 2020, the Plan had 28,203 participants with account balances. *See* 2020 Form 5500 for the Plan, at 2. By 2024, the Plan had 34,000 participants with account balances. *See* 2024 Form 5500 for the Plan, at 2.

13.     The Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments. Plaintiffs allege that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance, and failing to control the Plan's RKA costs.

14.     The marketplace for retirement plan services is established and competitive. Accordingly, in addition to the large number of participants, the Plan had substantial bargaining power to obtain high-quality, low-cost RKA services. The Plan's fiduciaries, however, did not try to reduce the Plan's expenses to ensure they were prudent. Rather, the Plan's fiduciaries allowed unreasonable expenses to be charged to participants for RKA services.

15.     During the Class Period, Defendants caused the Plan to enter into an arrangement with Transamerica Retirement Solutions, LLC ("Transamerica"), who was a party-in-interest[4] engaging in party-in-interest transactions. Specifically, Transamerica received millions of dollars in exchange for recordkeeping services for the Plan. This arrangement, and transactions with Transamerica, are prohibited transactions because they "amount[] to a 'direct or indirect ... furnishing of services ... between the plan and a party in interest,' 29 U.S.C. § 1106(a)(1)(C)." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 (8th Cir. 2009).

16.     Defendants' mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duty of prudence, in violation of 29 U.S.C. § 1104. Their actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

17.     Based on this conduct, Plaintiffs assert claims against Defendants for breach of the fiduciary duty of prudence (Count I), failure to monitor fiduciaries (Count II) and violations of ERISA's prohibited transactions (Count III).

## II.     JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

---

[4] "Transamerica Retirement Solutions, LLC is the record-keeper for the Plan, and therefore, these transactions qualify as party in interest transactions." Auditor's Report, attached to 2024 Form 5500 for the Plan, at 14.

19.     This Court has personal jurisdiction over the Company because it is headquartered and transacts business in this District, resides in this District, and/or has significant contacts with this District, and because ERISA provides for nationwide service of process.

20.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.    PARTIES

### Plaintiffs

21.     Plaintiff, Deborah Brown ("Brown"), resides in Laurel, Maryland. During her employment, Plaintiff Brown participated in the Plan. During the Class Period, Ms. Brown invested in the American Century One Choice 2030 I fund in the Plan. She suffered injury to her Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Brown also suffered injury to her Plan account by paying excessive recordkeeping costs.

22.     Plaintiff, Lamintress Lyles ("Lyles"), resides in Fort Mill, South Carolina. During her employment, Plaintiff Lyles participated in the Plan. During the Class Period, Ms. Lyles invested in the American Century One Choice 2045 I fund in the Plan. She suffered injury to her Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Lyles also suffered injury to her Plan account by paying excessive recordkeeping costs.

23.     Plaintiff, Steven Walters ("Walters"), resides in Dundalk, Maryland. During his employment, Plaintiff Walters participated in the Plan. During the Class Period, Mr. Walters invested in the American Century One Choice 2045 I fund and the American Century One Choice

2050 I fund in the Plan. He suffered injury to his Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Walters also suffered injury to his Plan account by paying excessive recordkeeping costs.

24.     Plaintiff, Tiara Jones ("Jones"), resides in Baltimore, Maryland. During her employment, Plaintiff Jones participated in the Plan. During the Class Period, Ms. Jones invested in the American Century One Choice 2050 I fund in the Plan. She suffered injury to her Plan account from the underperformance of the funds in the Plan. In addition, Plaintiff Jones also suffered injury to her Plan account by paying excessive recordkeeping costs.

25.     Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan and were injured by Defendants' unlawful conduct. Plaintiffs are entitled to receive benefits in the amount of the difference between the value of their accounts currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth, but for Defendants' breaches of fiduciary duties as described herein.

26.     Plaintiffs did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendants**

***Company Defendant***

27.     The Johns Hopkins Health System Corporation is the sponsor of the Plan and the administrator of the Plan with a principal place of business at 1812 Ashland Avenue, Baltimore, Maryland. *See* 2024 Form 5500 for the Plan, at 1-2. The Johns Hopkins Health System Corporation (JHHS) is a not-for-profit organization dedicated to providing the highest quality patient health

care in the treatment and prevention of human illness.  *See* https://www.gilbaneco.com/about/, last accessed March 20, 2026.

28.     The Plan is administered by the Administrative Committee Johns Hopkins Health System (*see* SPD, at 4), whose members are appointed by the Company.

29.     The Company appointed the Committee to, among other things, ensure that the investments available to Plan participants are appropriate, performed well as compared to their peers and that the Plan paid a fair price for recordkeeping and administrative services. As will be discussed below, the Committee fell well short of these fiduciary goals. Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

30.     Accordingly, the Company during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Committee.

31.     For the foregoing reasons, the Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

### Committee Defendants

32.     The Committee is the Plan Administrator for the Plan. *See* SPD, at 4 (identifying the Administrative Committee Johns Hopkins Health System Corporation as the Plan Administrator).

33.     The Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each exercised discretionary authority over management or disposition of Plan assets.

34.    The Committee and unnamed members of the Committee during the Class Period (referred to herein as John Does 1-10), are collectively referred to herein as the "Committee Defendants."

## IV.    CLASS ACTION ALLEGATIONS[5]

35.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):

> All persons, except Defendants, who were participants in or beneficiaries of The Johns Hopkins Health System Corporation 403(b) Plan, at any time between March 30, 2020 through the date of judgment (the "Class Period").[6]

36.    The members of the Class are so numerous that joinder of all members is impractical. The 2024 Form 5500 lists 34,000 Plan "participants with account balances as of the end of the plan year." 2024 Form 5500 for the Plan, at 2.

37.    Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan and suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs consistently with other Class members, and managed the Plan as a single entity. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

---

[5] Although this is a proposed class action, the allegations in this complaint are alternatively pled in derivative fashion on behalf of the Plan because class certification is not necessarily required for Plaintiff to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington Trust Corp.*, 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan.

[6] Plaintiff reserves the right to modify the class definition, propose additional classes or subclasses, in the motion for class certification or subsequent pleadings in this action.

38.     There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.     Whether Defendants are fiduciaries of the Plan;

B.     Whether Defendants breached their fiduciary duty of prudence by engaging in the conduct described herein;

C.     The proper form of equitable and injunctive relief; and

D.     The proper measure of monetary relief.

39.     Plaintiffs will fairly and adequately represent the Class, and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action, and anticipate no difficulty in the management of this litigation as a class action.

40.     This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

41.     In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V.    THE PLAN

42.    "The Plan is a defined contribution 403(b) plan covering substantially all employees of The Johns Hopkins Health System Corporation … . The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA)." *See* Auditor's Report, attached to 2024 Form 5500 for the Plan, at 7

### *Eligibility*

43.    Employees of the Company become eligible to participate in the Plan after their date of hire. *See* SPD, at 6 ("For purposes of Roth and salary deferral contributions, you may become a participant immediately upon your date of hire or as soon as administratively feasible.").

44.    There is an automatic enrollment feature in the Plan. *See* Auditor's Report, attached to 2024 Form 5500 for the Plan, at 8 ("The Plan automatically enrolls eligible employees hired on or after January 1, 2009 who do not affirmatively elect not to participate. Participant contributions are made on a tax deferred basis, pursuant to a deemed salary reduction agreement, in which contributions total 2% of compensation during the first year of participation and increase by 1% each following year up to a maximum of 10% of compensation, unless otherwise affirmatively elected by the participant.")

### *Contributions*

45.    Participants may elect to contribute up to 100% of their salary as an employee elective deferral contribution. *See* Auditor's Report, attached for Form 5500 for the Plan, at 7 ("Eligible employees may elect to contribute through regular payroll deductions from 1% to 100%

of their annual compensation in pre-tax and Roth contributions subject to Internal Revenue Code limitations.").

46.    "The Corporation will make matching contributions equal to 50% of the amount of a participant's contributions that do not exceed 2% of the participant's compensation for the plan year." *Id*., at 8.

47.    "Additionally, the Corporation will make an integrated contribution for the plan year equal to 4% of a participant's compensation for the plan year that does to exceed the taxable wage base, plus 5% of the participant's compensation for the plan year that exceeds the taxable wage base." *Id*.

48.    To receive matching and nonelective contributions, participants must complete 1,000 hours of work. *See* SPD, at 6 ("For purposes of matching and nonelective contributions … you must have worked 1,000 hours of service during the eligibility period.").

49.    Like other companies that sponsor 403(b) plans for their employees, Hopkins enjoys both direct and indirect benefits by providing matching contributions to Plan participants. Employers are generally permitted to take tax deductions for their contributions to 403(b) plans at the time when the contributions are made. *See generally,* https://www.irs.gov/retirement-plans/irc-403b-tax-sheltered-annuity-plans#:~:text=A%20403(b)%20plan%20(tax%2Dsheltered%20annuity%20plan,their%20salary%20into%20individual%20accounts.

50.    Hopkins also benefits in other ways from the Plan's matching program. It is well-known that "[o]ffering retirement plans can help in employers' efforts to attract new employees and reduce turnover." *See* https://www.paychex.com/articles/employee-benefits/employer-matching-401k-benefits.

51.     Given the size of the Plan, Hopkins likely enjoyed significant tax and cost savings from offering a match.

### The Plan's Investments

52.     Several funds were available to Plan participants for investment each year during the Class Period, including several American Century One Choice Retirement Trust funds ("AC TDFs").

53.     At the end of 2020, $517,728,365 in Plan assets were invested in the AC TDFs. *See* Schedule H, Line 4i – Schedule of Assets (Held at End of Year), attached to 2020 Form 5500 for the Plan, at 15.

54.     At the end of 2024, over 741 million in Plan assets were invested in the AC TDFs. *See* Schedule H, Line 4i – Schedule of Assets (Held at End of Year), attached to 2024 Form 5500 for the Plan, at 17.

55.     The chart below demonstrates the amount of Plan assets invested in the AC TDFs during the Class Period.

| Plan Year | Plan Assets in AC TDFs | Total Amount of Plan Assets | Plan Assets in AC TDFs as Percentage of Total Plan Assets |
|---|---|---|---|
| 2020 | $517,728,365 | $1,192,752,529 | 43.41% |
| 2021 | Unknown | $1,349,164,220 | |
| 2022 | $527,765,800 | $1,212,382,944 | 43.53% |
| 2023 | $642,257,477 | $1,449,412,779 | 44.31% |
| 2024 | $741,236,173 | $1,677,903,170 | 44.18% |

VI.     **THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATES THAT THE PLAN'S FIDUCIARIES FAILED TO ADMINISTER THE PLAN IN A PRUDENT MANNER**

A.     **Overview - ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology of Evaluating Investments**

56. As described in the "Parties" section above, Defendants were fiduciaries of the Plan.

57. ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*, 135 S. Ct. at 1828; *see also Hughes*, 142 S.Ct. at 741.

58. Plaintiffs did not have and do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for selecting, monitoring, and removing the Plan's investments because this information is solely within the possession of Defendants prior to discovery.

59. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes and methods based upon several factors as described below.

60. As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services. …" DOL 408(b)(2) Regulation Fact Sheet.

61. The duty "…to act solely in the best interest of participants has been a key tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36, published by Vanguard, 2019.[7]

---

[7] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

62.     Acting in the sole interest of plan participants is all encompassing. A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional. *See* the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

63.     A prudent investment professional, and hence a fiduciary, must regularly evaluate a fund's performance history, total assets under management within the fund, fees, and other relevant factors.

64.     With respect to investment returns, diligent investment professionals monitor the performance of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

65.     The measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

66.     The specific methodologies used to select prudent investments are primarily data driven. Such data is provided by investment research companies like Morningstar, which is the most accepted source of investment performance information, as it has the most robust information on mutual funds, collective investment trusts, and other types of investments.[8] Indeed, Morningstar is used and trusted by virtually all financial professionals and fiduciaries, as explained below, who

---

[8] *See Mattson et al, v. Milliman, Inc.,* 2024 WL  3024875, n. 13 (W.D. Wa. June 17, 2024) ("Morningstar, Inc. is a widely recognized and respected financial reporting group.")

were required to use Morningstar benchmarks to evaluate the performance of retirement plan funds, including target date funds.

67.    Whether a plan fiduciary enlists the assistance of an investment manager, consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for selecting and monitoring the plan's investment options.

68.    It is black letter law that a fiduciary's duty to conduct an "independent investigation into the merits of a particular investment," is the "most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Circ. 1996). *Hughes*, 142 S.Ct. at 738 (noting ERISA fiduciaries are required to "conduct their own independent evaluation to determine which investments may by prudently included in the plan's menu of options.").

69.    Lastly, to the extent plan fiduciaries have adopted an investment policy statement, those fiduciaries "must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

70.    Defendants' breaches of their fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and maintenance) of the AC TDFs in the Plan throughout the Class Period that wasted the assets of the Plan and the assets of participants because of unnecessary costs and underperformance.

## B.    Evaluating Investments

71.    Industry experts have concluded that the three- and five-year period is the most appropriate timeframe for evaluating investment performance because it covers a full market cycle. *See* The PNC Financial Services Group, Inc., Assembling a Robust Investment Policy Statement

16

for Endowments and Foundations, June 17, 2021 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)"). Available at: https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html.[9]

72. In fact, Morningstar is used by American Century in the American Century Target Date Series' "Statement of Additional Information" supplementing the Prospectuses.[10]

73. Defendants' breaches of their fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and retention) of the Target Date Fund ("TDF") series identified below, that wasted the assets of the Plan and the assets of participants because of unnecessary costs and predictable underperformance.

**C.    Defendants Breached their Fiduciary Duties by Selecting and Retaining in the Plan's Lineup the Chronically Underperforming AC TDFs**

**1.    The Plan's Inclusion of AC TDFs**

74. At all relevant times, Defendants selected the materially underperforming American Century One Choice Series of retirement date funds for inclusion in the Plan. The AC TDFs were offered in several different forms including the I Class. As used herein, the entire series will be referred to as the "American Century Series," when referred to collectively.

75. Target date funds are a staple in almost every defined contribution plan. Although no two target date series are identical, the general strategy, underlying investments, and risk profile is the same across all target date series: "[a] target-date fund is a fund of funds that provides asset-

---

[9] Last accessed March 20, 2026.

[10] *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321020000124/acaapocp2065catchupsai.htm

17

class diversity through a blend of stocks and bonds. Portfolios are adjusted for lower risk as they approach a designated target date" of retirement. https://www.morningstar.com/investing-definitions/target-date-funds-. The subtle differences between series are what makes them more or less prudent than others, especially in terms of performance predictability.

76.    Target date funds are designed to provide a single diversified investment vehicle for plan participants. Target date funds are offered as a suite of funds, with each fund based on the participant's anticipated retirement date.

77.    The first target date funds in the industry were offered as early as 1994, and since then the market for target date funds has exploded with numerous investment managers offering a variety of different target date fund investments.

78.    By the mid-2000s, many target date funds with established performance histories were available to defined contribution plans. By 2009, several target date funds had performance histories of five years or more.

79.    Multiple types of assets are included in a target date fund portfolio, including equity (stock) and fixed income (bond) securities. Target date funds offer diversity and balanced exposure to a broad array of underlying securities included in the fund.

80.    An investment in a single target date fund can be attractive to plan participants who do not want to actively manage their retirement savings and periodically convert to more conservative holdings as their retirement date draws near. Target date funds automatically rebalance their portfolios to become more conservative as the participant gets closer to retirement.

81.    This rebalancing occurs based on the fund's "glide path." A glide path determines how the fund's target asset allocations across the underlying securities are expected to change over time and how they become more conservative as the target retirement date approaches.

82.     The target date refers to the participant's expected retirement year. For example, "target date 2030" funds are designed for individuals who intend to retire in 2030. As the year 2030 approaches, the fund's investment manager adjusts the underlying asset mix to become more conservative.

83.     Target date funds have been divided into two broad categories by some industry professionals based on the fund's glide path: "To" and "Through" target date funds. A "To" target date fund is designed to allocate its underlying assets to the most conservative investments at the year of the expected retirement. In contrast, a "Through" target date fund continues its glidepath progression to reach its most conservative asset allocation past the expected retirement date. This method focuses on the life expectancy of the participant rather than the retirement date.

84.     The AC TDFs in the Plan were "To" funds.

85.     Another broad classification of target date funds is "actively" or "passively" managed funds. With an actively managed fund, the portfolio manager attempts to select stocks or bonds to generate investment returns that exceed the relevant benchmark index return. With a passively managed fund, the portfolio manager attempts to mimic the performance of a relevant benchmark index. No discretion or research is needed for passive funds, in contrast to actively managed funds. Because of this, passive or index funds charge a much lower investment management fee and have a lower total "expense ratio" relative to active funds.[11]

86.     A fiduciary's duty to ensure that a prudent target date fund is offered to plan participants is heightened when considering the circumstances in which these funds are used by

---

[11] The fees of mutual funds and similar investment alternatives are usually expressed as a percentage of assets under management, or "expense ratio." For example, if the fund deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points ("bps"). One basis point is equal to 1/100th of one percent.

participants. Given the structure of target date funds, participants often invest all their retirement assets in a single target date fund that matches their retirement date.

87.    A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional.

88.    The prevailing standard of care for a fiduciary is to compare investments to several benchmarks. These benchmarks are the relevant market index, peer groups, and individual investible funds that represent alternatives that could replace an investment's position in a plan's investment menu.

89.    Here, the performance histories of the American Century One Choice Series were mediocre when compared to their appropriate peer groups.

### 2.    Evaluating the American Century Target Date Series

90.    The American Century Target Date Series consistently materially underperformed available alternative TDF series as well as the relevant market index and peer groups.

91.    While ignoring red flags found in a fund's prospectuses is imprudent, it is also imprudent not to investigate objective information that third parties provide regarding an investment.

92.    Throughout the Class Period, American Century Investments repeatedly disseminated information that demonstrated poor ratings, performance, strategy, and management of the funds. American Century Investments' reporting of these bad facts outweighed the existence of any seemingly benign facts in the reports. This is especially true because, objective, third-party information also negated any potential redeeming facts American Century stated regarding its own funds.

20

**3.     Morningstar Benchmarks are Meaningful for Evaluating the Underperformance of the American Century One Choice Series**

93.     American Century Investments' "Statement of Additional Information"[12] dated September 23, 2020, states that the American Century Target Date Series' "Peer Group" is the "Morningstar Target-Date" peer group (or category).

94.     Further, American Century uses data that "is proprietary to Morningstar and/or its content providers" on its webpages for the One Choice portfolios.[13]

95.     For another example, American Century publishes Morningstar star ratings on its webpages for the American Century Target Date Series. *See* https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/.

96.     Morningstar is an accepted unbiased source of investment fund information, as Morningstar evaluates funds beyond what is stated in their prospectus.

97.     Further, because the Morningstar Peer Group is the appropriate peer group (or universe), the Morningstar Lifetime Moderate Index is another appropriate index to benchmark the American Century Target Date Series against.

98.     In short, the Morningstar Lifetime Moderate Index category is the appropriate index for understanding what information Defendants likely had at their disposal in the moments when it was supposed to be making decisions regarding the American Century Target Date Series.

99.     The "Morningstar Target-Date" peer group, as designated for the American Century Target Date Series by its manager, is the appropriate Morningstar Category.

---

[12] *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321020000124/acaapocp2065catchupsai.htm

[13] *See*, *e.g.*, https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/

21

100.   A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in Allegretti similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

101.   Specifically, Morningstar Categories group funds "into categories according to their actual investment style, not merely their stated investment objectives, nor their ability to generate a certain level of income. To ensure homogeneous groupings, Morningstar normally allocates funds to categories on the basis of their portfolio holdings. Several portfolios are taken into account to ensure that the fund's real investment stance is taken into account." https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en-GB&group=M.

102.   Morningstar categories are more reliable than simply comparing fund prospectuses, because Morningstar is a third-party providing objective, disinterested information. Indeed, "Morningstar categories help investors and investment professionals make meaningful comparisons between funds." https://sg.morningstar.com/sg/news/115635/morningstar-category-definition.aspx

103.   The Morningstar Peer Group being the appropriate peer group (or universe), is another reason why the Morningstar Lifetime Moderate Index is an appropriate index to benchmark the American Century Target Date Series against.

a.        **The Comparator Funds**

104.    The established target date investment managers that are worthy of providing alternative TDF investments for the Plan include, but are not limited to, American Funds, Blackrock LifePath Funds, Fidelity Freedom Funds, MoA Clear Passage Funds, Putnam Retirement Funds, and Voya Target Retirement Funds.

105.    The American Funds Target Date R6 Series, the BlackRock LifePath Dynamic Retirement Fund K series, the Fidelity Freedom K6 Series, the MoA Clear Passage Target Date Series, the Putnam Retirement Advantage R6 Series, and the Voya Target Date R6 Series will all be referred to as the "Comparator Funds."

106.    The Comparator Funds are grouped in the same Morningstar Category as the American Century Target Date Series and are comparable based on several aspects:

***Underlying Holding and Management***

107.    The American Century Target Date Series and each of the Comparator Funds are large blend style funds, per their Morningstar pages.

108.    "[N]o series is truly passively managed, as every target-date manager makes active decisions in building a glide path and selecting asset classes, sometimes tactically based on market outlooks." *See* https://www.morningstar.com/funds/1-trillion-target-date-fund-landscape.

109.    The Comparator Funds also all have a significant degree of active management, or are purely actively managed.

110.    The 2045 vintage is a good demonstration of the asset allocations for the American Century Target Date Series, the Comparator Funds, the Morningstar Category, and the Morningstar Index, because the target date is neither too close nor too distant. The asset allocation is sufficiently similar across all funds, where U.S. Equities are the largest percentage of holdings,

and the remaining holding are Fixed Income (or bonds), Cash investments, and "other" or "not classified" investments:[14]

    a.    <u>Blackrock LifePath Funds</u>. The Blackrock Lifepath K Funds target date funds pursue the same investment objectives as the American Century One Choice funds, invest primarily in equity (stock) and fixed income (bond) securities as do the American Century One Choice funds, invest in both U.S. and foreign securities as do the American Century One Choice, are managed by well-known investment advisers, and are available to all large retirement plans including the Plan.[15]

    b.    <u>Fidelity Freedom Funds</u>. The Fidelity Freedom K6 target date funds pursue the same investment objectives as the American Century One Choice funds, invest primarily in equity (stock) and fixed income (bond) securities as do the American Century One Choice funds, invest in both U.S. and foreign securities as do the American Century One Choice funds, are managed by well-known investment advisers, and are available to all large retirement plans including the Plan.[16]

---

[14] As is demonstrated by the Morningstar graphs at Appendix "A," all six funds concentrate their holdings in the large blend risk/return category. It's for this reason that the five Comparator Funds are accurate comparators.

[15] *See* Blackrock Lifepath Supplement dated February 24, 2026 to the Summary Prospectuses and Prospectuses of each Fund, as amended, available at https://www.blackrock.com/us/individual/literature/summary-prospectus/sumpro-lpi2045-k-us.pdf.

[16] *See* Fidelity Freedom 2045 Fund Class K6 Summary Prospectus, May 30, 2025, As Revised September 9, 2025, available at https://institutional.fidelity.com/app/proxy/content?literatureURL=/B-CF45-K6-SUM.PDF.

c.      MoA Clear Passage Funds. The Mutual of America Clear Passage target date funds pursue the same investment objectives as the American Century One Choice funds, invest primarily in equity (stock) and fixed income (bond) securities as do the American Century One Choice funds, invest in both U.S. and foreign securities as do the American Century One Choice funds, are managed by well-known investment advisers, and are available to all large retirement plans including the Plan.[17]

d.      Putnam Retirement Funds. The Putnam Retirement Advantage Plus funds pursue the same investment objectives as the American Century One Choice funds, invest primarily in equity (stock) and fixed income (bond) securities as do the American Century One Choice funds, invest in both U.S. and foreign securities as do the American Century One Choice funds, are managed by well-known investment advisers, and are available to all large retirement plans including the Plan.[18]

e.      Voya Target Retirement Funds. The Voya Target Retirement funds pursue the same investment objectives as the American Century One Choice funds, invest primarily in equity (stock) and fixed income (bond) securities as do the American Century One Choice funds, invest in both U.S. and foreign securities as do the American Century One Choice funds, are managed by

---

[17] See MoA Clear Passage 2045 Fund Fact Sheet, available at https://moafunds.com/funds/target-date/clear-passage-2045.

[18] See Putnam Retirement Advantage Plus Funds Prospectus, February 27, 2026, available at https://www.franklintempleton.com/tools-and-resources/lit-preview/39010/R6.

well-known investment advisers, and are available to all large retirement plans including the Plan.[19]

111.    Relevant for comparison purposes is that the Comparator Funds represented similar priorities of asset allocation at the same time, yet to a lesser extreme, which resulted in the Comparator Funds achieving better returns without using a pointlessly unorthodox glidepath strategy.

### Glide Paths and Strategy

112.    The strategy of a target date series is to "gradually shift[] a retirement fund's investments from riskier to safer options as you get closer to retirement age. This reallocation is based on the Fund's 'glide path.'" *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 210 (6th Cir. Nov. 20, 2024) (internal citations omitted).

113.    "Glide paths in retirement funds come in two main types: 'to' and 'through.' 'To' glide paths reach their most conservative allocation at the target retirement date and stay there, while 'through' glide paths continue to adjust and become more conservative for several years after the retirement date." *Id*.

114.    Also, a "'to' objective is focused on limiting the volatility or the variability of outcomes for the investor up to retirement, while a 'through' objective drives growth for participant balances for several years and then allows them to be converted into income through retirement." https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/, dated February 17, 2021.

---

[19] *See* Voya Target Retirement 2045 Fund Fact Sheet, 4Q25, available at https://individuals.voya.com/document/fund-fact-sheet/voya-target-retirement-2045-fund-fact-sheet.pdf.

115. "The retirement industry previously perceived "to" glide paths as more conservative than "'through' ones[,]" but the market volatility of the 2020 Covid-19 Pandemic dispelled the widely held beliefs that there is a material difference in outcomes based on a fund's glidepath, as opposed to other factors. https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/, dated February 17, 2021.

116. Critically, as target-date portfolio specialist Joe Martel explained, "volatility risk" is "rarely catastrophic due to its short-term nature." "However, longevity risk is a lasting problem—a participant who runs out of retirement income at age 80 or 85 will experience devastating consequences." https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

117. For this reason, by the year 2024, 73% of TDFs were "through" funds "that continue to change their allocations for up to 30 years after the target date, while the remainder are "to" funds with allocations that no longer change after the target date." *See* https://www.ici.org/system/files/2025-12/25-ici-quick-facts-target-date-funds.pdf.

118. In short, even if the type of glidepath were a prominent consideration for fiduciaries (it is not), "to" glidepaths are unfavored because, the "through" glidepath TDF's provide more secure long-term income which is the essential purpose of a TDF, while the relatively brief market volatility for which "to" glidepaths purport to protect against have proven to be inconsequential in the long term.

119. Hence, a prudent fiduciary investigating the marketplace's trends and alternative funds will compare funds with to and through glide paths.

120. Indeed, even American Century deems it acceptable to compare the American Century Target Date Series to both "to" and "through" glidepath TDFs, because American Century

states that Morningstar's TDF peer group is appropriate, despite the fact that it includes TDFs with both types of glidepath.

121.    American Century Investments states that the American Century Target Date Series have "a more moderate, flatter glide path, which aims to keep more participants on course throughout the journey to and through retirement." *See* https://res.americancentury.com/docs/a-auth/one-choice-target-date-portfolios-plan-sponsor-brochure?cpg=true.

122.    The Summary Prospectus, dated December 1, 2025 for the American Century Investments One Choice Blend+ 2030 Portfolio explains how the glidepath operates: "approximately five years after the target date, at which point its neutral mix is expected to become fixed at 40% stock funds, 51% bond funds and 9% short-term funds." *See* https://www.sec.gov/Archives/edgar/data/1293210/000129321025000228/acaapocpblend2030portfolio.htm.

123.    Morningstar reports that the "American Century One Choice target-date series offers a contrarian approach to retirement investing. A distinctly flat glide path aims to mitigate sharp drawdowns for most of the investment journey but courts above-average risk for retirees." https://www.morningstar.com/funds/xnas/arfsx/quote.

124.    Because of the unconventional, unproven glidepath strategy, the American Century Funds necessitate a heightened level of scrutiny by fiduciaries to determine whether the strategy was working as hoped.

125.    As discussed herein, American Century's speculation that the atypically "flatter" glidepath strategy would lead to better results than the results achieved by other TDFs using conventional wisdom achieved never materialized. In fact, it repeatedly proved to be a losing strategy.

126. Indeed, the strategy did not materially "mitigate sharp drawdowns", particularly when properly viewing the American Century Target Date Series' returns for a whole market cycle.

127. Instead, the American Century Target Date Series underperformed for years before and after market draw downs, performed unremarkably during market draw downs, and repeatedly proved to have a defective strategy that did not achieve the fund's aims- thus guaranteeing that retirees were not receiving safe and/or optimal funds for and throughout retirement.

128. The American Century Target Date Series offered no meaningful market volatility security nor greater income in the longevity sense, particularly compared to the dozens of other TDF series the Plan could have invested in that employed conventional wisdom for their glidepaths, allocations, and strategies.

129. Had Defendants investigated the marketplace they would have discovered that other TDFs with "moderate" glidepaths seeking stability in market downturns existed, without going to the extreme flat glidepath that the American Century Target Date Series employed.

130. These moderate glidepath TDFs, including some of the Comparator Funds, ensured that the more important, higher possible returns in good markets were not sacrificed for the short-term safer returns in market downturns.

131. The Voya Target Retirement Funds are "to" glidepath TDFs like the American Century Target Date Series, but with a more conventional approach, which resulted in greater returns overall.[20]

---

[20] *See*
https://presents.voya.com/Content/Delivers/adp/presentationresources/Voya_TARGET_SOLUTION_TRUST_SERIES_Q4_2024.pdf

132. The BlackRock LifePath Dynamic Target Date Funds' glidepath is also comparable because it is a "to" glidepath, like the American Century Target Date Series, and the fund's "asset mix between equity and fixed income assets becomes more conservative — prior to retirement — as time elapses."[21]

133. The Putnam Retirement Advantage target date funds' glidepath is also comparable because it is a "to" glidepath, like the American Century Target Date Series.[22]

134. The below table compares the American Target Date Series to the aforementioned funds, demonstrating the American Target Date Series' dismal performance:

| Group/Investment | 1/1/2020 12/31/2020 Return (Cumulative) | 1/1/2021 12/31/2021 Return (Cumulative) | 1/1/2022 12/31/2022 Return (Cumulative) | 1/1/2023 12/31/2023 Return (Cumulative) | 1/1/2024 12/31/2024 Return (Cumulative) | 1/1/2025 12/31/2025 Return (Cumulative) |
|---|---|---|---|---|---|---|
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 I | 12.85 | 10.34 | -14.58 | 12.31 | 8.21 | 10.69 |
| BlackRock LifePath® Dyn 2030 K | 13.36 | 11.70 | -15.63 | 15.61 | 10.58 | 13.92 |
| Putnam Retirement Advantage 2030 R6 | 11.91 | 12.07 | -14.26 | 14.82 | 12.34 | 11.94 |
| Voya Target Retirement 2030 R6 | 14.60 | 13.42 | -17.39 | 15.73 | 10.85 | 15.36 |
| *Morningstar Lifetime Mod 2030 TR USD* | 13.69 | 11.69 | -17.94 | 13.33 | 8.83 | 14.79 |
| | | | | | | |
| **US CIT Target-Date 2035** | | | | | | |
| American Century One Choice 2035 I | 14.08 | 11.02 | -15.44 | 13.08 | 8.90 | 11.36 |
| BlackRock LifePath® Dyn 2035 K | 14.14 | 13.97 | -16.32 | 17.53 | 12.06 | 15.57 |
| Putnam Retirement Advantage 2035 R6 | 13.43 | 14.72 | -15.16 | 18.20 | 16.24 | 14.58 |
| Voya Target Retirement 2035 R6 | 15.78 | 15.52 | -17.98 | 17.64 | 12.35 | 17.16 |
| *Morningstar Lifetime Mod 2035 TR USD* | 13.38 | 13.63 | -17.75 | 14.84 | 10.18 | 16.27 |
| | | | | | | |
| **US CIT Target-Date 2040** | | | | | | |
| American Century One Choice 2040 I | 15.43 | 11.68 | -16.22 | 13.87 | 9.73 | 12.25 |
| BlackRock LifePath® Dyn 2040 K | 14.23 | 16.38 | -16.90 | 19.55 | 14.20 | 17.23 |

---

[21] *See* https://www.troweprice.com/personal-investing/tools/fund-research/target-date-funds#TargetFunds.

[22] *See* https://www.putnam.com/target-date-funds-tool/the-glide-path.

| | | | | | | |
|---|---|---|---|---|---|---|
| Putnam Retirement Advantage 2040 R6 | 14.46 | 16.48 | -15.90 | 20.00 | 18.13 | 16.70 |
| Voya Target Retirement 2040 R6 | 17.15 | 17.70 | -18.37 | 19.29 | 13.72 | 19.16 |
| *Morningstar Lifetime Mod 2040 TR USD* | 13.09 | 15.35 | -17.37 | 16.34 | 11.70 | 18.00 |
| | | | | | | |
| **US CIT Target-Date 2045** | | | | | | |
| American Century One Choice 2045 I | 16.63 | 12.52 | -16.84 | 14.59 | 10.55 | 13.09 |
| BlackRock LifePath® Dyn 2045 K | 14.54 | 17.93 | -17.44 | 21.22 | 15.85 | 18.70 |
| Putnam Retirement Advantage 2045 R6 | 14.99 | 17.62 | -16.50 | 21.33 | 19.31 | 18.28 |
| Voya Target Retirement 2045 R6 | 17.60 | 19.02 | -18.53 | 20.16 | 14.91 | 20.19 |
| *Morningstar Lifetime Mod 2045 TR USD* | 12.95 | 16.36 | -17.06 | 17.39 | 12.86 | 19.54 |
| | | | | | | |
| **US CIT Target-Date 2050** | | | | | | |
| American Century One Choice 2050 I | 17.73 | 13.50 | -17.15 | 15.35 | 11.40 | 13.70 |
| BlackRock LifePath® Dyn 2050 K | 15.07 | 18.45 | -18.47 | 22.28 | 16.74 | 20.37 |
| Putnam Retirement Advantage 2050 R6 | 15.96 | 18.59 | -17.04 | 22.78 | 20.24 | 19.01 |
| Voya Target Retirement 2050 R6 | 17.38 | 18.90 | -18.70 | 20.51 | 15.38 | 20.78 |
| *Morningstar Lifetime Mod 2050 TR USD* | 12.91 | 16.60 | -16.91 | 17.85 | 13.36 | 20.52 |
| | | | | | | |
| **US CIT Target-Date 2055** | | | | | | |
| American Century One Choice 2055 I | 18.16 | 14.11 | -17.40 | 15.91 | 12.33 | 14.36 |
| BlackRock LifePath® Dyn 2055 K | 15.69 | 18.72 | -18.49 | 22.38 | 17.36 | 21.21 |
| Putnam Retirement Advantage 2055 R6 | 16.62 | 19.59 | -17.55 | 24.29 | 21.30 | 19.53 |
| Voya Target Retirement 2055 R6 | 17.53 | 19.08 | -18.81 | 20.71 | 15.55 | 20.83 |
| *Morningstar Lifetime Mod 2055 TR USD* | 12.91 | 16.50 | -16.93 | 17.90 | 13.33 | 20.96 |
| | | | | | | |
| **US CIT Target-Date 2060** | | | | | | |
| American Century One Choice 2060 I | 18.34 | 14.61 | -17.58 | 16.27 | 12.67 | 14.63 |
| BlackRock LifePath® Dyn 2060 K | 14.62 | 18.43 | -18.51 | 22.62 | 17.36 | 21.41 |
| Putnam Retirement Advantage 2060 R6 | 17.09 | 20.32 | -17.91 | 25.56 | 22.27 | 19.95 |
| Voya Target Retirement 2060 R6 | 17.82 | 19.33 | -18.83 | 20.77 | 15.54 | 20.91 |
| *Morningstar Lifetime Mod 2060 TR USD* | 12.89 | 16.33 | -16.98 | 17.86 | 13.15 | 21.15 |
| | | | | | | |
| **US CIT Target-Date 2065+** | | | | | | |
| American Century One Choice 2065 I | | 14.68 | -17.65 | 16.47 | 12.98 | 14.89 |
| BlackRock LifePath® Dyn 2065 K | 14.15 | 18.72 | -18.37 | 22.75 | 16.73 | 21.39 |

31

| | | | | | | |
|---|---|---|---|---|---|---|
| Putnam Retirement Advantage 2065 R6 | | 20.41 | -18.06 | 26.06 | 22.70 | 20.38 |
| Voya Target Retirement 2065 R6 | | 19.31 | -18.86 | 20.92 | 15.69 | 20.96 |
| *Morningstar Lifetime Mod 2065 TR USD* | 12.88 | 16.10 | -17.00 | 17.78 | 12.92 | 21.29 |

135. The above data also demonstrates why it is appropriate to evaluate TDFs through full market cycles rather than myopically focusing on a TDF's behavior during a market downturn. The volatility risks faced by these funds were predictably short-term while the surrounding years offered outweighing potential returns that the BlackRock Putnam and Voya funds achieved and the American Century Target Date Series did not.

136. The MoA Clear Passage funds are "through" glidepaths, but in a more conservative sense because the glidepath becomes fixed within 10 years of the retirement date.[23]

137. The Fidelity Freedom Funds are also "through" glidepaths, and "are generally expected to reach their most conservative allocation 10–19 years after the target date."[24]

138. Below is a comparison of the American Century Target Date Series to the MoA Clear Passage funds and Fidelity Freedom Funds:

| Group/Investment | 1/1/2020 12/31/2020 Return (Cumulative) | 1/1/2021 12/31/2021 Return (Cumulative) | 1/1/2022 12/31/2022 Return (Cumulative) | 1/1/2023 12/31/2023 Return (Cumulative) | 1/1/2024 12/31/2024 Return (Cumulative) | 1/1/2025 12/31/2025 Return (Cumulative) |
|---|---|---|---|---|---|---|
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 I | 12.85 | 10.34 | -14.58 | 12.31 | 8.21 | 10.69 |
| Fidelity Freedom 2030 K6 | 15.84 | 11.69 | -16.77 | 15.72 | 9.51 | 17.95 |
| MoA Clear Passage 2030 Fund | 11.67 | 15.29 | -14.14 | 15.25 | 11.16 | 13.85 |
| | | | | | | |
| **US CIT Target-Date 2035** | | | | | | |
| American Century One Choice 2035 I | 14.08 | 11.02 | -15.44 | 13.08 | 8.90 | 11.36 |
| Fidelity Freedom 2035 K6 | 17.41 | 14.56 | -17.51 | 18.06 | 11.33 | 19.56 |
| MoA Clear Passage 2035 Fund | 12.61 | 17.84 | -15.20 | 17.26 | 13.05 | 15.32 |
| | | | | | | |

---

[23] *See* https://moafunds.com/funds/target-date
[24] *See* https://www.fidelity.com/mutual-funds/fidelity-fund-.

| US CIT Target-Date 2040 | | | | | | |
|---|---|---|---|---|---|---|
| American Century One Choice 2040 I | 15.43 | 11.68 | -16.22 | 13.87 | 9.73 | 12.25 |
| Fidelity Freedom 2040 K6 | 18.53 | 16.70 | -18.06 | 20.26 | 13.61 | 22.34 |
| MoA Clear Passage 2040 Fund | 13.43 | 19.89 | -15.37 | 18.87 | 14.35 | 16.95 |
| | | | | | | |
| US CIT Target-Date 2045 | | | | | | |
| American Century One Choice 2045 I | 16.63 | 12.52 | -16.84 | 14.59 | 10.55 | 13.09 |
| Fidelity Freedom 2045 K6 | 18.46 | 16.78 | -18.12 | 20.91 | 14.40 | 24.07 |
| MoA Clear Passage 2045 Fund | 13.31 | 20.57 | -15.59 | 19.64 | 14.90 | 17.70 |
| | | | | | | |
| US CIT Target-Date 2050 | | | | | | |
| American Century One Choice 2050 I | 17.73 | 13.50 | -17.15 | 15.35 | 11.40 | 13.70 |
| Fidelity Freedom 2050 K6 | 18.48 | 16.79 | -18.10 | 20.87 | 14.44 | 24.05 |
| MoA Clear Passage 2050 Fund | 13.39 | 20.82 | -15.66 | 19.94 | 15.39 | 17.82 |
| | | | | | | |
| US CIT Target-Date 2055 | | | | | | |
| American Century One Choice 2055 I | 18.16 | 14.11 | -17.40 | 15.91 | 12.33 | 14.36 |
| Fidelity Freedom 2055 K6 | 18.46 | 16.77 | -18.07 | 20.85 | 14.43 | 24.06 |
| MoA Clear Passage 2055 Fund | 13.93 | 21.11 | -15.77 | 19.98 | 15.66 | 18.27 |
| | | | | | | |
| US CIT Target-Date 2060 | | | | | | |
| American Century One Choice 2060 I | 18.34 | 14.61 | -17.58 | 16.27 | 12.67 | 14.63 |
| Fidelity Freedom 2060 K6 | 18.53 | 16.71 | -18.09 | 20.87 | 14.39 | 24.13 |
| MoA Clear Passage 2060 Fund | 14.08 | 21.60 | -15.72 | 20.19 | 15.73 | 18.45 |
| | | | | | | |
| US CIT Target-Date 2065+ | | | | | | |
| American Century One Choice 2065 I | | 14.68 | -17.65 | 16.47 | 12.98 | 14.89 |
| Fidelity Freedom 2065 K6 | 18.33 | 16.75 | -18.04 | 20.78 | 14.43 | 24.08 |
| MoA Clear Passage 2065 Fund | | 21.73 | -15.54 | 20.50 | 16.01 | 18.17 |

**D.    The American Century Series of Target Date Funds Chronically Underperformed**

139.    In 2020, the Plan held over $517 million dollars in the American Century Target Date Series. *See* Schedule of Assets Held at End of Year, attached to 2020 Form 5500, at 15. With such a large amount invested in the target date series, the Plan would have been able to choose virtually any available target date series for the Plan.

33

140.    The American Century Target Date Series are the only target date investing options in the Plan. In other words, participants in the Plan who want to invest in a target date strategy have no choice other than the American Century Target Date Series.

141.    Defendants were under an obligation under ERISA to carefully vet the American Century Target Date Series before selecting them for inclusion in the Plan. Defendants were also under a continuing obligation under ERISA to carefully monitor and scrutinize the performance of the American Century Target Date Series on an ongoing basis thereafter.

**1.    The American Century Target Date Series Materially Underperformed Relative to Comparator Target Date Funds and Indexes**

142.    A prudent fiduciary should have used some or all of the aforementioned benchmarks, or substantially similar benchmarks, to evaluate the performance of the American Century Target Date Series at least as early as the inception of the Class Period.

143.    The performance of the American Century Target Date Series lagged behind the performance of the applicable Comparator Funds for many years before the inception of the Class Period clearly showing that it was an imprudent choice for the Plan.

144.    As seen in the table below, the Challenged Funds (in yellow) underperformed compared to the peers in their Morningstar Categories and their Morningstar benchmarks on a 3-year average basis since the start of the Class Period and continued to underperform throughout the Class Period. Specifically, the chart below demonstrates that, from 2020 through 2025, the 2030-2065 vintages of the American Century Target Date Series underperformed against the Comparator Funds' corresponding vintages 193 out of 209 instances (92.34%).

| Group/Investment | 1/1/2018 12/31/2020 Return (Annualized) | 1/1/2019 12/31/2021 Return (Annualized) | 1/1/2020 12/31/2022 Return (Annualized) | 1/1/2021 12/31/2023 Return (Annualized) | 1/1/2022 12/31/2024 Return (Annualized) | 1/1/2023 12/31/2025 Return (Annualized) |
|---|---|---|---|---|---|---|
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 I | 8.27 | 13.95 | 2.08 | 1.91 | 1.25 | 11.21 |
| BlackRock LifePath® Dyn 2030 K | 9.50 | 15.69 | 2.23 | 2.90 | 2.56 | 13.35 |
| Fidelity Freedom 2030 K6 | 9.63 | 16.45 | 2.50 | 2.46 | 1.79 | 14.34 |
| MoA Clear Passage 2030 Fund | 8.39 | 16.22 | 3.40 | 4.49 | 3.23 | 13.41 |
| Putnam Retirement Advantage 2030 R6 | | | 2.45 | 3.33 | 3.41 | 13.02 |
| Voya Target Retirement 2030 R6 | 8.85 | 16.18 | 2.40 | 2.74 | 1.96 | 13.96 |
| *Morningstar Lifetime Mod 2030 TR USD* | 9.09 | 15.47 | 1.38 | 1.27 | 0.40 | 12.29 |
| | | | | | | |
| **US CIT Target-Date 2035** | | | | | | |
| American Century One Choice 2035 I | 8.88 | 15.05 | 2.31 | 2.01 | 1.36 | 11.98 |
| BlackRock LifePath® Dyn 2035 K | 9.87 | 17.25 | 2.87 | 3.88 | 3.30 | 15.03 |
| Fidelity Freedom 2035 K6 | 10.39 | 18.83 | 3.53 | 3.72 | 2.73 | 16.26 |
| MoA Clear Passage 2035 Fund | 8.85 | 17.94 | 4.01 | 5.42 | 3.98 | 15.20 |
| Putnam Retirement Advantage 2035 R6 | | | 3.35 | 4.78 | 5.24 | 16.33 |
| Voya Target Retirement 2035 R6 | 9.46 | 17.85 | 3.14 | 3.69 | 2.73 | 15.70 |
| *Morningstar Lifetime Mod 2035 TR USD* | 9.14 | 16.60 | 1.95 | 2.38 | 1.34 | 13.73 |
| | | | | | | |
| **US CIT Target-Date 2040** | | | | | | |
| American Century One Choice 2040 I | 9.51 | 16.13 | 2.60 | 2.13 | 1.54 | 12.87 |
| BlackRock LifePath® Dyn 2040 K | 10.07 | 18.75 | 3.38 | 4.96 | 4.30 | 16.97 |
| Fidelity Freedom 2040 K6 | 10.78 | 20.25 | 4.26 | 4.77 | 3.84 | 18.68 |
| MoA Clear Passage 2040 Fund | 9.07 | 19.10 | 4.80 | 6.45 | 4.78 | 16.71 |
| Putnam Retirement Advantage 2040 R6 | | | 3.89 | 5.54 | 6.03 | 18.27 |
| Voya Target Retirement 2040 R6 | 9.95 | 19.46 | 4.02 | 4.65 | 3.46 | 17.36 |
| *Morningstar Lifetime Mod 2040 TR USD* | 9.10 | 17.50 | 2.54 | 3.51 | 2.40 | 15.32 |
| | | | | | | |
| **US CIT Target-Date 2045** | | | | | | |
| American Century One Choice 2045 I | 10.08 | 17.29 | 2.96 | 2.35 | 1.75 | 13.68 |
| BlackRock LifePath® Dyn 2045 K | 10.11 | 19.60 | 3.70 | 5.68 | 5.06 | 18.57 |
| Fidelity Freedom 2045 K6 | 10.78 | 20.27 | 4.24 | 4.95 | 4.24 | 19.72 |
| MoA Clear Passage 2045 Fund | 8.97 | 19.38 | 4.87 | 6.78 | 5.08 | 17.39 |
| Putnam Retirement Advantage 2045 R6 | | | 4.14 | 6.02 | 6.52 | 19.63 |
| Voya Target Retirement 2045 R6 | 10.09 | 20.43 | 4.47 | 5.23 | 4.00 | 18.40 |
| *Morningstar Lifetime Mod 2045 TR USD* | 9.03 | 17.99 | 2.92 | 4.25 | 3.19 | 16.56 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **US CIT Target-Date 2050** | | | | | | |
| American Century One Choice 2050 I | 10.61 | 18.43 | 3.45 | 2.75 | 2.11 | 15.22 |
| BlackRock LifePath® Dyn 2050 K | 10.23 | 19.96 | 3.58 | 5.70 | 5.19 | 19.77 |
| Fidelity Freedom 2050 K6 | 10.76 | 20.25 | 4.26 | 4.95 | 4.24 | 19.72 |
| MoA Clear Passage 2050 Fund | 8.86 | 19.53 | 4.94 | 6.92 | 5.29 | 17.70 |
| Putnam Retirement Advantage 2050 R6 | | | 4.49 | 6.50 | 6.99 | 20.67 |
| Voya Target Retirement 2050 R6 | 10.02 | 20.44 | 4.30 | 5.22 | 4.17 | 18.86 |
| *Morningstar Lifetime Mod 2050 TR USD* | 8.96 | 18.09 | 3.04 | 4.52 | 3.54 | 17.20 |
| | | | | | | |
| **US CIT Target-Date 2055** | | | | | | |
| American Century One Choice 2055 I | 10.74 | 18.91 | 3.65 | 2.99 | 2.46 | 15.22 |
| BlackRock LifePath® Dyn 2055 K | 10.41 | 20.30 | 3.83 | 5.80 | 5.39 | 20.30 |
| Fidelity Freedom 2055 K6 | 10.78 | 20.24 | 4.26 | 4.95 | 4.25 | 19.71 |
| MoA Clear Passage 2055 Fund | 8.90 | 19.73 | 5.14 | 6.97 | 5.34 | 17.96 |
| Putnam Retirement Advantage 2055 R6 | | | 4.76 | 7.01 | 7.52 | 21.69 |
| Voya Target Retirement 2055 R6 | 10.09 | 20.59 | 4.35 | 5.28 | 4.23 | 19.00 |
| *Morningstar Lifetime Mod 2055 TR USD* | 8.88 | 18.05 | 3.00 | 4.50 | 3.54 | 17.36 |
| | | | | | | |
| **US CIT Target-Date 2060** | | | | | | |
| American Century One Choice 2060 I | 10.87 | 19.28 | 3.78 | 3.18 | 2.59 | 15.54 |
| BlackRock LifePath® Dyn 2060 K | 9.97 | 19.83 | 3.42 | 5.77 | 5.45 | 20.44 |
| Fidelity Freedom 2060 K6 | 10.78 | 20.22 | 4.25 | 4.93 | 4.23 | 19.73 |
| MoA Clear Passage 2060 Fund | | 19.99 | 5.35 | 7.19 | 5.44 | 18.11 |
| Putnam Retirement Advantage 2060 R6 | | | 4.97 | 7.44 | 8.02 | 22.57 |
| Voya Target Retirement 2060 R6 | 10.15 | 20.77 | 4.50 | 5.37 | 4.24 | 19.05 |
| *Morningstar Lifetime Mod 2060 TR USD* | 8.81 | 17.95 | 2.92 | 4.41 | 3.45 | 17.34 |
| | | | | | | |
| **US CIT Target-Date 2065+** | | | | | | |
| American Century One Choice 2065 I | | | | 3.23 | 2.72 | 15.80 |
| BlackRock LifePath® Dyn 2065 K | | | 3.42 | 5.96 | 5.36 | 20.26 |
| Fidelity Freedom 2065 K6 | | | 4.23 | 4.94 | 4.24 | 19.70 |
| MoA Clear Passage 2065 Fund | | | | 7.40 | 5.70 | 18.21 |
| Putnam Retirement Advantage 2065 R6 | | | | 7.54 | 8.22 | 23.03 |
| Voya Target Retirement 2065 R6 | | | | 5.39 | 4.31 | 19.16 |
| *Morningstar Lifetime Mod 2065 TR USD* | 8.52 | 17.80 | 2.84 | 4.31 | 3.35 | 17.28 |

145.    As seen in the table below, the Challenged Funds (in yellow) underperformed compared to the peers in their Morningstar Categories and their Morningstar benchmarks on a 5-year average basis since the start of the Class Period and continued to underperform throughout

the Class Period. Specifically, the chart below demonstrates that, from 2020 through 2025, the 2030-2065 vintages of the American Century Target Date Series underperformed against the Comparator Funds' corresponding vintages 176 out of 181 instances (97.24%).

| Group/Investment | 1/1/2016 12/31/2020 Return (Annualized) | 1/1/2017 12/31/2021 Return (Annualized) | 1/1/2018 12/31/2022 Return (Annualized) | 1/1/2019 12/31/2023 Return (Annualized) | 1/1/2020 12/31/2024 Return (Annualized) | 1/1/2021 12/31/2025 Return (Annualized) |
|---|---|---|---|---|---|---|
| | | | | | | |
| **US CIT Target-Date 2030** | | | | | | |
| American Century One Choice 2030 I | 9.01 | 9.76 | 3.65 | 7.26 | 5.27 | 5.49 |
| BlackRock LifePath® Dyn 2030 K | 10.72 | 11.58 | 4.35 | 8.59 | 6.43 | 6.54 |
| Fidelity Freedom 2030 K6 | 11.32 | 12.04 | 4.14 | 8.75 | 6.42 | 6.80 |
| MoA Clear Passage 2030 Fund | 10.33 | 11.23 | 4.74 | 9.21 | 7.21 | 7.62 |
| Putnam Retirement Advantage 2030 R6 | | | | | 6.76 | 6.77 |
| Voya Target Retirement 2030 R6 | 10.07 | 11.41 | 3.86 | 8.44 | 6.62 | 6.76 |
| *Morningstar Lifetime Mod 2030 TR USD* | 10.58 | 11.07 | 3.54 | 7.44 | 5.15 | 5.35 |
| | | | | | | |
| **US CIT Target-Date 2035** | | | | | | |
| American Century One Choice 2035 I | 9.63 | 10.49 | 3.91 | 7.80 | 6.13 | 5.69 |
| BlackRock LifePath® Dyn 2035 K | 11.36 | 12.60 | 4.81 | 9.66 | 7.47 | 7.74 |
| Fidelity Freedom 2035 K6 | 12.30 | 13.50 | 4.92 | 10.32 | 7.84 | 8.23 |
| MoA Clear Passage 2035 Fund | 10.97 | 12.22 | 5.20 | 10.28 | 8.33 | 8.84 |
| Putnam Retirement Advantage 2035 R6 | | | | | 8.69 | 8.91 |
| Voya Target Retirement 2035 R6 | 10.82 | 12.53 | 4.44 | 9.57 | 7.72 | 7.97 |
| *Morningstar Lifetime Mod 2035 TR USD* | 11.14 | 11.85 | 3.97 | 8.41 | 6.04 | 6.57 |
| | | | | | | |
| **US CIT Target-Date 2040** | | | | | | |
| American Century One Choice 2040 I | 10.35 | 11.27 | 4.20 | 8.36 | 6.18 | 6.32 |
| BlackRock LifePath® Dyn 2040 K | 11.91 | 13.56 | 5.22 | 10.72 | 8.57 | 9.13 |
| Fidelity Freedom 2040 K6 | 12.57 | 14.20 | 5.39 | 11.37 | 9.14 | 9.83 |
| MoA Clear Passage 2040 Fund | 11.20 | 12.79 | 5.65 | 11.19 | 9.36 | 10.03 |
| Putnam Retirement Advantage 2040 R6 | | | | | 9.71 | 10.14 |
| Voya Target Retirement 2040 R6 | 11.42 | 13.45 | 5.01 | 10.67 | 8.83 | 9.20 |
| *Morningstar Lifetime Mod 2040 TR USD* | 11.48 | 12.42 | 4.36 | 9.30 | 6.98 | 7.89 |
| | | | | | | |
| **US CIT Target-Date 2045** | | | | | | |
| American Century One Choice 2045 I | 11.03 | 12.06 | 4.54 | 8.99 | 6.69 | 6.81 |
| BlackRock LifePath® Dyn 2045 K | 12.14 | 14.05 | 5.38 | 11.36 | 9.39 | 10.17 |
| Fidelity Freedom 2045 K6 | 12.58 | 14.23 | 5.38 | 11.49 | 9.39 | 10.41 |

| | | | | | | |
|---|---|---|---|---|---|---|
| MoA Clear Passage 2045 Fund | 11.19 | 12.91 | 5.66 | 11.43 | 9.65 | 10.49 |
| Putnam Retirement Advantage 2045 R6 | | | | | 10.33 | 10.96 |
| Voya Target Retirement 2045 R6 | 11.63 | 13.93 | 5.29 | 11.33 | 9.50 | 9.98 |
| *Morningstar Lifetime Mod 2045 TR USD* | 11.61 | 12.70 | 4.58 | 9.84 | 7.63 | 8.85 |
| | | | | | | |
| **US CIT Target-Date 2050** | | | | | | |
| American Century One Choice 2050 I | 11.59 | 12.78 | 4.94 | 9.68 | 7.30 | 7.36 |
| BlackRock LifePath® Dyn 2050 K | 12.32 | 14.32 | 5.28 | 11.47 | 9.67 | 10.66 |
| Fidelity Freedom 2050 K6 | 12.59 | 14.23 | 5.38 | 11.47 | 9.41 | 10.42 |
| MoA Clear Passage 2050 Fund | 11.18 | 12.93 | 5.62 | 11.55 | 9.85 | 10.69 |
| Putnam Retirement Advantage 2050 R6 | | | | | 10.99 | 11.57 |
| Voya Target Retirement 2050 R6 | 11.63 | 13.90 | 5.18 | 11.35 | 9.55 | 10.17 |
| *Morningstar Lifetime Mod 2050 TR USD* | 11.62 | 12.75 | 4.62 | 10.03 | 7.88 | 9.30 |
| | | | | | | |
| **US CIT Target-Date 2055** | | | | | | |
| American Century One Choice 2055 I | 11.80 | 13.07 | 5.06 | 9.99 | 7.71 | 7.82 |
| BlackRock LifePath® Dyn 2055 K | 12.37 | 14.43 | 5.43 | 11.67 | 9.96 | 10.99 |
| Fidelity Freedom 2055 K6 | 12.56 | 14.21 | 5.40 | 11.47 | 9.40 | 10.42 |
| MoA Clear Passage 2055 Fund | | 13.03 | 5.67 | 11.65 | 10.03 | 10.86 |
| Putnam Retirement Advantage 2055 R6 | | | | | 11.63 | 12.18 |
| Voya Target Retirement 2055 R6 | 11.71 | 14.01 | 5.22 | 11.44 | 9.65 | 10.25 |
| *Morningstar Lifetime Mod 2055 TR USD* | 11.61 | 12.71 | 4.55 | 10.01 | 7.86 | 9.36 |
| | | | | | | |
| **US CIT Target-Date 2060** | | | | | | |
| American Century One Choice 2060 I | 11.95 | 13.30 | 5.18 | 10.21 | 7.93 | 8.04 |
| BlackRock LifePath® Dyn 2060 K | | | 5.12 | 11.45 | 9.74 | 11.02 |
| Fidelity Freedom 2060 K6 | 12.55 | 14.18 | 5.38 | 11.46 | 9.39 | 10.41 |
| MoA Clear Passage 2060 Fund | | | | 11.84 | 10.21 | 11.05 |
| Putnam Retirement Advantage 2060 R6 | | | | | 12.17 | 12.71 |
| Voya Target Retirement 2060 R6 | 11.74 | 14.11 | 5.30 | 11.54 | 9.75 | 10.32 |
| *Morningstar Lifetime Mod 2060 TR USD* | 11.57 | 12.65 | 4.46 | 9.94 | 7.77 | 9.31 |
| | | | | | | |
| **US CIT Target-Date 2065+** | | | | | | |
| American Century One Choice 2065 I | | | | | | 8.25 |
| BlackRock LifePath® Dyn 2065 K | | | | | 9.65 | 11.01 |
| Fidelity Freedom 2065 K6 | | | | | 9.37 | 10.41 |
| MoA Clear Passage 2065 Fund | | | | | | 11.18 |
| Putnam Retirement Advantage 2065 R6 | | | | | | 12.93 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Voya Target Retirement 2065 R6 | | | | | | 10.37 |
| *Morningstar Lifetime Mod 2065 TR USD* | 11.38 | 12.43 | 4.25 | 9.83 | 7.66 | 9.22 |

146.    Further, the tables above demonstrate that the American Century Target Date Series underperformed their Morningstar benchmarks on a 3-year and 5-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2025-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 3-year average basis 62.22% during the Class Period. The 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 5-year average basis 65.12% during the Class Period.

147.    Finally, Morningstar provided ratings for the 2030 to 2065 target dates. Regardless of any year/vintage over or under performing, a holistic view shows that Morningstar consistently rated every 2030 – 2065 vintage as having low or below average performance for the last 3, 5 and 10 year periods. Morningstar also rates funds with between one and five stars, with one being worst and five being best. With the exception of the 2030 vintage, which rated 2 stars, the rest had a one-star rating.

| American Century Investments One Choice Portfolio Investor Class | Three years | Five years | Ten Years | Overall |
|---|---|---|---|---|
| 2030[25] | 2 | 2 | 1 | 2 |
| 2035[26] | 1 | 1 | 1 | 1 |
| 2040[27] | 1 | 1 | 1 | 1 |
| 2045[28] | 1 | 1 | 1 | 1 |
| 2050[29] | 1 | 1 | 1 | 1 |
| 2055[30] | 1 | 1 | 1 | 1 |

---

[25] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F654
[26] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F886
[27] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F613
[28] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F845
[29] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F563
[30] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F381

| | | | | |
|---|---|---|---|---|
| 2060[31] | 1 | 1 | 1 | 1 |
| 2065[32] | 1 | 1 | N/A | 1 |

148.    An overwhelming body of information available at every point in time would have warned Defendants of the need to select a different target date series. Unfortunately for Plan participants, Defendants continuously failed to investigate and/or act on this information.

## VII.    DEFENDANTS COMMITTED A PROHIBITED TRANSACTION RESULTING IN EXCESSIVE RKA COSTS FOR THE PLAN AND ITS PARTICIPANTS

149.    During the Class Period, Defendants entered into a contract with Transamerica Retirement Solutions, LLC to provide among other things, RKA services. However, such engagements and subsequent services provided by Transamerica constitute prohibited transactions under ERISA.

150.    29 U.S.C. §§ 1106(a)(1)(C) provides that "(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … (C) furnishing of goods, services, or facilities between the plan and a party in interest."

151.    Here, Transamerica was a party in interest to the Plan as it was receiving compensation for RKA services.

### A.    Costs for Recordkeeping Services Vary Little for Plans with a Substantial Number of Participants

152.    The term "recordkeeping" is a catchall term for the suite of administrative services typically provided to a defined contribution plan by the plan's "recordkeeper." Recordkeeping and administrative services fees are one and the same and the terms are used synonymously herein and referred to as RKA.

---

[31] https://fundresearch.fidelity.com/mutual-funds/ratings/02507F191
[32] https://fundresearch.fidelity.com/mutual-funds/ratings/02507J862

153.    There are two essential recordkeeping services provided by all national recordkeepers for large plans with substantial bargaining power (like the Plan). First, an overall suite of recordkeeping services is provided to large plans as part of a "bundled" fee for a buffet style level of service (meaning that the services are provided, in retirement industry parlance, on an "all-you-can-eat" basis), including, but not limited to, the following services:

A.    Basic account recordkeeping (e.g. demographic, source, investment and vesting records);

B.    Multi-channel participant and plan sponsor access (e.g. phone, web);

C.    Daily participant transaction accounting (e.g., purchases, redemptions, exchanges);

D.    Payroll service (e.g. hardships, in-service withdrawals, termination distributions);

E.    Participant tax reporting services (e.g., IRS Form 1099-R);

F.    Participant confirmations, statements, and standard notices;

G.    Plan-level reporting and annual financial package (excluding IRS Form 5500);

H.    Participant education (e.g. newsletters, web articles, standard communication materials);

I.    Plan consulting (e.g., preapproved document services, operational materials);

J.    Plan consulting (e.g. preapproved document services, operational compliance support).

154.    This suite of essential recordkeeping services can be referred to as "Bundled" services. These services are offered by all recordkeepers for one price (typically at a per capita price), regardless of the services chosen or utilized by the plan. As explained in more detail below,

41

the services chosen by a large plan do not affect the amount charged by recordkeepers for such basic and fungible services.

155.   The second type of essential recordkeeping services, hereafter referred to as "A La Carte" services, provided by all national recordkeepers, often has separate, additional fees based on the conduct of individual participants and the usage of the services by individual participants. These fees are distinct from the bundled arrangement described above to ensure that one participant is not forced to help another cover the cost of, for example, taking a loan from their plan account balance. These A La Carte services typically include, but are not limited to, the following:

a.   Loan processing;

b.   Brokerage services/account maintenance (if offered by the plan);

c.   Distribution services; and

d.   Processing of qualified domestic relations orders.

156.   All national recordkeepers have the capability to provide all of the aforementioned recordkeeping services at very little cost to defined contribution plans, including those much smaller than the Plan. In fact, several of the services, such as managed account services, self-directed brokerage, Qualified Domestic Relations Order processing, and loan processing are often a profit center for recordkeepers.

157.   In general, the level, number and character of participant services provided by the recordkeeper have minimal impact upon the costs of providing recordkeeping. That is because building and maintaining a robust, intuitive, web-based participant interactive 401(k) account system incurs large fixed costs. Each additional participant placed on the system causes a minimal incremental/marginal cost to the record keeper *notwithstanding the level, number and character of the services provided to that additional participant*.

158.   Recordkeepers such as Transamerica, among others, invest in technology infrastructure necessary to provide recordkeeping and transaction services to all clients (e.g., website, call center, and some print services).

159.   Accordingly, a plan sponsor or fiduciary has the leverage to negotiate favorable rates given that costs of implementation do not change for the service provider.

**B.     The Plan's Recordkeeping Fees to Transamerica were Excessive**

160.   As demonstrated in the tables below, the Plan's participants were saddled with above-market administrative and recordkeeping fees during the Class Period.

161.   The Plan's per participant RKA fees were as follows:

| Plan Year | Recordkeeper | Participants | Total RKA Reported | PP$ |
|---|---|---|---|---|
| 2020 | Transamerica | 28,203 | $2,175,865 | $77.15 |
| 2021 | Transamerica | 30,052 | $1,428,626 | $47.54 |
| 2022 | Transamerica | 32,205 | $1,330,201 | $41.30 |
| 2023 | Transamerica | 34,017 | $1,417,466 | $41.67 |
| 2024 | Transamerica | 34,000 | $1,636,060 | $48.12 |

162.   Looking at recordkeeping costs for plans similar in size to the assets and participant size of the Plan during the Class Period up through 2024 shows that the Plan was paying higher recordkeeping fees than its peers.

| Plan Year | Plan Name | Participants | Assets Under Management | Recordkeeper | Schedule C Codes | Cost Per Participant[33] |
|---|---|---|---|---|---|---|
| 2020 | Optumcare Management, LLC 401(k) Retirement Savings Plan | 9,832 | $938,281,291 | Fidelity | 37 60 64 65 71 | $19 |
| 2020 | FedEx Office and Print Services, Inc. 401(k) Retirement Savings Plan | 19,354 | $1,051,387,744 | Vanguard | 15 16 21 25 26 37 50 52 57 | $23 |
| 2020 | Pacific Architects and Engineers, LLC 401(k) Savings Plan | 7,597 | $493,950,650 | Fidelity | 37 60 64 65 | $28 |

---

[33] Unless otherwise noted, these fees are taken from the Form 5500s.

43

| | | | | | |
|---|---|---|---|---|---|
| 2020 | PG&E Corporation Retirement Savings Plan | 12,273 | $3,781,395,000 | Fidelity | 37 64 65 71 | $29 |
| 2020 | FedEx Office and Print Services, Inc. 401(k) Retirement Savings Plan | 19,354 | $1,051,387,744 | Vanguard | 15 25 50 16 26 52 21 37 57 | $23 |
| 2020 | Viacom 401(k) Plan | 12,469 | $1,747,213,865 | Great-West | 15 37 50 64 | $37 |
| **2020** | **Hopkins 403(b) Plan** | **28,203** | **$1,192,752,529** | **Transamerica** | **12 15 28 37 38 50 54 59 61 62 63 64** | **$77** |
| 2021 | Crowe LLP Retirement Plan | 6,840 | $1,021,351,197 | Vanguard | 15 33 37 99 | $27 |
| 2021 | Optumcare Management, LLC 401(k) Retirement Savings Plan | 10,170 | $1,341,037,601 | Fidelity | 37 60 64 65 71 | $28 |
| 2021 | Pacific Architects and Engineers, LLC 401(k) Savings Plan | 14,583 | $693,883,632 | Fidelity | 37 60 64 65 | $5 |
| 2021 | FedEx Office and Print Services, Inc. 401(k) Retirement Savings Plan | 20,072 | $1,218,209,533 | Vanguard | 15 25 52 16 37 57 21 50 26 50 | $31 |
| 2021 | The Tax Sheltered Annuity Plan of Texas Children's Hospital | 15,788 | $1,706,447,554 | Fidelity | 37, 60, 64, 65, 71 | $26 |
| 2021 | Fortive Retirement Savings Plan | 12,758 | $1,987,784,377 | Fidelity | 37, 64, 65, 71 | $34 |
| 2021 | PG&E Corporation Retirement Savings Plan | 12,994 | $4,285,161,000 | Fidelity | 37 64 65 71 | $33 |
| **2021** | **Hopkins 403(b) Plan** | **30,052** | **$1,349,164,220** | **Transamerica** | **12 15 28 37 38 50 54 59 61 62 63 64 65** | **$48** |
| 2022 | The Tax Sheltered Annuity Plan of Texas Children's Hospital | 16,973 | $1,475,238,032 | Fidelity | 37, 60, 64, 65, 71 | $29 |
| 2022 | Crowe LLP Retirement Plan | 7,584 | $992,984,046 | Vanguard | 15 33 37 99 | $26 |
| 2022 | Optumcare Management, LLC 401(k) Retirement Savings Plan | 11,787 | $1,099,817,927 | Fidelity | 37 60 64 65 71 | $30 |
| 2022 | FedEx Office and Print Services, Inc. 401(k) Retirement Savings Plan | 20,817 | $1,076,210,385 | Vanguard | 15 25 50 16 33 52 21 37 57 26 50 | $29 |

| Year | Plan | Participants | Assets | Recordkeeper | Funds | Fee |
|---|---|---|---|---|---|---|
| 2022 | Vista Outdoor Inc. 401(k) Plan | 7,295 | $440,444,788 | Vanguard | 15 16 33 37 38 99 | $33 |
| 2022 | Expeditors International of Washington, Inc. 401(k) Plan | 9,597 | $839,061,386 | T. Rowe Price | 15 21 25 28 37 38 49 50 52 59 62 64 65 | $31 |
| **2022** | **Hopkins 403(b) Plan** | **32,205** | **$1,212,382,944** | **Transamerica** | **12 15 28 37 38 50 54 59 61 62 63 64** | **$41** |
| 2023 | The Tax Sheltered Annuity Plan of Texas Children's Hospital | 18,163 | $1,837,546,518 | Fidelity | 37, 60, 64, 65, 71 | $32 |
| 2023 | Crowe LLP | 7,992 | $992,984,046 | Vanguard | 15 33 37 99 | $26 |
| 2023 | FedEx Office and Print Services, Inc. 401(k) Retirement Savings Plan | 20,327 | $1,270,937,672 | Vanguard | 15 25 50 16 33 52 21 37 57 26 50 | $24 |
| 2023 | Fortive Retirement Savings Plan | 13,503 | $1,915,519,824 | Fidelity | 37, 64, 65, 71 | $26 |
| **2023** | **Hopkins 403(b) Plan** | **34,017** | **$1,449,412,779** | **Transamerica** | **12 15 28 37 38 50 54 59 61 62 63 64 65** | **$42** |
| 2024 | The Tax Sheltered Annuity Plan of Texas Children's Hospital | 18,510 | $2,141,432,097 | Fidelity | 37, 60, 64, 65, 71 | $40 |
| 2024 | Crowe LLP | 7,934 | $1,265,316,102 | Vanguard | 15 33 37 99 | $21 |
| 2024 | FedEx Office and Print Services, Inc. 401(k) Retirement Savings Plan | 20,115 | $1,421,158,765 | Vanguard | 15 25 50 16 33 52 21 37 57 26 50 | $30 |
| 2024 | Fortive Retirement Savings Plan | 13,189 | $2,138,117,923 | Fidelity | 37, 64, 65, 71 | $29 |
| **2024** | **Hopkins 403(b) Plan** | **34,000** | **$1,677,903,170** | **Transamerica** | **12 15 28 37 38 50 54 59 61 62 63 64 65** | **$48** |

163. The above table demonstrates that for similar plans, regarding assets and participants, the Plan had one of the highest recordkeeping fees during the Class Period. The fees from 2020 to 2024 are illustrative of the excessiveness of fees that exist through the present.

164. The Plan's average $51 per participant fee from 2020 to 2024 is almost twice as high as the average fee of $28 per participant from 2020 to 2024 for the twenty-seven (27) plans listed above.

165. This vast discrepancy between the Plan's RKA fees and comparable plans existed for all years from 2020 through 2024. Indeed, as noted above, the figures in the above chart are just an example of the Plan's excessive RKA fees during the Class Period.

166. The Plan should have been able to obtain per participant recordkeeping fees of no more than $28 per participant, and likely even less. This fee is consistent with the average recordkeeping fees paid by similar plans in the country as demonstrated in the allegations above.

167. Because Transamerica was a party-in-interest, the Plan's fiduciaries should have taken the additional sources of income paid to Transamerica into consideration to reduce the excessive RKA fees paid to Transamerica.

168. For the foregoing reasons, Defendants' violation of ERISA's prohibited transactions resulted in Plan participants paying excessive RKA fees to Transamerica.

## COUNT I
### Breaches of Fiduciary Duty of Prudence
### (against the Committee)

169. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

170. At all relevant times, the Committee and its members ("Prudence Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

171.   As a fiduciary of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

172.   The Prudence Defendants breached these fiduciary duties as discussed throughout this Complaint. Prudence Defendants did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the interest of Plan participants. Instead, the Prudence Defendants selected and retained investment options in the Plan despite the poor performance of the funds in relation to other comparable investments.

173.   As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to lower net investment returns. Had the Prudence Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

174.   Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

175.   The Prudence Defendants knowingly participated in each breach, knowing that such acts were a breach, and failed to make any reasonable and timely effort under the circumstances to remedy the breaches.

## COUNT II
### Failure to Adequately Monitor Other Fiduciaries
### (against the Company)

176.   Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

177.   Hopkins (the "Monitoring Defendant") had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and was aware that the Committee had critical responsibilities as fiduciaries of the Plan.

178.   In light of this authority, the Monitoring Defendant had a duty to monitor the Committee to ensure that the Committee was adequately performing its fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committee was not fulfilling those duties.

179.   The Monitoring Defendant also had a duty to ensure that the members of the Committee possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to the Company.

180.   The Monitoring Defendant breached its fiduciary monitoring duties by, among other things, failing to monitor and evaluate the performance of the Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee's imprudent actions and omissions.

181.   As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars in losses. Had the Monitoring Defendant complied with its fiduciary

obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

182.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendant is liable to restore to the Plan all losses caused by their failure to adequately monitor the Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in their Prayer for Relief.

**COUNT III**
**Prohibited Transaction**
**(against All Defendants)**

183.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

184.    Under ERISA, a plan fiduciary may not "cause the plan to engage in a transaction" if the fiduciary "knows or should know that such transaction constitutes a direct or indirect" (i) exchange of any property between the plan and a party in interest, or (ii) the furnishing of services between the plan and a party in interest. 29 U.S.C. § 1106(a)(1)(C).

185.    ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include (A) "any fiduciary . . . of such employee benefit plan;" (B) "a person providing services to such plan;" (C) "an employer any of whose employees are covered by such plan," and "(H) any employee, officer, or director of such employer."

186.    Defendants' decision to agree to pay excessive fees to Transamerica as recordkeeper during the Class Period for the Plan amounted to a direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest" pursuant to ERISA § 406(a)(1)(C) and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" pursuant to ERISA § 406(a)(1)(D).

187.    Defendants caused the Plan to engage in the transactions with actual or constructive knowledge that the transactions constituted a direct or indirect exchange of property between the Plan and Transamerica.

188.    Defendants also caused the Plan to engage in the transactions with actual or constructive knowledge that the transactions constituted a direct or indirect furnishing of services between Transamerica and the Plan.

189.    Pursuant to 29 U.S.C. § 1109(a) and 1132(a)(2), Defendants, as fiduciaries to the Plan, are liable to restore to the Plan all losses caused by their violations of ERISA §§ 406(a)(1)(C) and (D).

## PRAYER FOR RELIEF

136.    WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of

the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.    An order requiring the Company Defendant to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against the Company Defendant as necessary to effectuate said relief, and to prevent the Company Defendant's unjust enrichment;

F.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.    An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H.    Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

I.    An award of pre-judgment interest;

J.    An award of costs pursuant to 29 U.S.C. § 1132(g);

K.    An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.    Such other and further relief as the Court deems equitable and just.

Dated: March 30, 2026                    Respectfully submitted,

                                        *Alexander W. Kalim*
                                        Alexander W. Kalim
                                        USDC Bar Number 31885

**GOHN HANKEY & BERLAGE LLP**
201 North Charles Street
Suite 2101
Baltimore, MD  21201
Tel: (410) 752-9300
Email: akalim@ghsllp.com

Mark K. Gyandoh, Esquire
(*Pro Hac Vice* to be requested)
James A. Maro, Esquire
(*Pro Hac Vice* to be requested)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Email:   markg@capozziadler.com
            jamesm@capozziadler.com

*Counsel for Plaintiffs and the Putative Class*